**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(P) (410) 962-7780 | (F) (410) 962-1812

June 15, 2022

LETTER TO COUNSEL

RE:   *Christopher H. v. Kijakazi*
       Civil No. 1:21-cv-01391-JMC

Dear Counsel:

On June 4, 2021, Plaintiff Christopher H. petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI"). (ECF No. 1).  I have considered the parties' cross-motions for summary judgment and Plaintiff's response. (ECF Nos. 13, 16, 17).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards.  *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's Motion, deny Defendant's Motion, and remand the ALJ's decision. This letter explains my rationale.

Plaintiff filed an application for SSI on May 26, 2015, with an alleged onset date of November 1, 2014. (Tr. 200-205).  Plaintiff's claims were denied initially on November 17, 2015, and again on reconsideration on February 10, 2016. (Tr. 108-114). A video hearing was held on January 11, 2018, before Administrative Law Judge (ALJ) Brian B. Rippel. (Tr. 16-34). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 16-34)*.* The Appeals Council declined review and consequently the ALJ's decision constituted the final, reviewable decision of the SSA. (Tr. 7-12). Plaintiff petitioned this Court to review the SSA's decision, and on May 20, 2020, the Court remanded the case for further administrative proceedings. (Tr. 527-553). The SSA Appeals Council subsequently vacated the ALJ's decision. (Tr. 554-560). The ALJ accordingly held a new hearing, and again denied Plaintiff's application for benefits on April 1, 2021. (Tr. 491-526, 471-483). The Appeals Council declined review and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA. (Tr. 1-6).

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform h[is] past work given the limitations caused by h[is] medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect h[is] ability to

work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that Plaintiff had not engaged "in substantial gainful activity since May 26, 2015, the application date." (Tr. 473). The ALJ further found that during the relevant time frame, Plaintiff suffered from the severe impairments of generalized anxiety disorder (GAD), dysthymia, major depressive disorder (with psychotic features), attention deficit disorder (ADD), and substance abuse disorder. *Id.* Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: limited to routine tasks in entry-level, unskilled work with instructions that are not involved; while the individual can sustain concentration and persistence for 2-hour segments, the job must include routine, customary breaks after about 2-hour periods of work; there must be no fast-paced production rate (defined as a setting in which a rapid pace of work is set by a conveyor belt or other similar external source, as well as rapid assembly line work where coworkers are side-by-side and the work of one affects the work of the other); limited to low-stress work (defined as involving only occasional independent decision making and/or changes in the work setting); and, requiring only occasional interaction with the public, coworkers, and/or supervisors; interactions with the public must be brief and superficial; and there must be no significant reading or writing as part of the job duties.

(Tr 476).

The ALJ determined that Plaintiff had no past relevant work. (Tr. 482). However, after considering the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy. *Id.* Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 483).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

On appeal, Plaintiff advances two overarching arguments: (1) the ALJ failed to identify an apparent conflict between the RFC and the DOT at step five; and (2) the ALJ did not include

necessary limitations in the RFC or explain why no such limitations were necessary. (ECF No. 13, Ex. 1). For the reasons discussed below, I find the ALJ's decision unsupported by substantial evidence. Therefore, I will deny Plaintiff's Motion for Summary Judgment (ECF No. 13), deny Defendant's Motion for Summary Judgment (ECF No. 16), and remand the ALJ's decision.

## ANALYSIS

An ALJ "has an affirmative responsibility to ask [a VE] about any possible conflict between [the VE's] evidence and information provided in the DOT." SSR 00–4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Accordingly, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* If the VE's testimony "appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." *Id.* The ALJ must resolve any conflict between the VE's testimony and the DOT before relying on the VE's testimony and "explain . . . how he or she resolved the conflict." *Id.*

The Fourth Circuit's decision in *Pearson v. Colvin* further clarified the ALJ's responsibilities under SSR 00–4p. 810 F.3d 204 (4th Cir. 2015). The Fourth Circuit held that an ALJ does not fulfill his or her "affirmative responsibility" by simply inquiring whether the VE's testimony comports with the DOT, but instead the ALJ "independently must identify conflicts" between the VE's testimony and the DOT. *Id.* at 209. Additionally, the *Pearson* Court explained that the ALJ's responsibility to identify and explain "apparent conflict[s]" under SSR 00–4p encompasses those conflicts "where the expert's testimony seems to, but does not necessarily, conflict" with the DOT. *Id.* The *Pearson* apparent conflict standard

> embraces the reality that, in many cases, testimony may only appear to conflict with the [DOT], and the vocational expert may be able to explain that, in fact, no conflict exists. However, if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision. An expert's testimony that apparently conflicts with the [DOT] can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation is reasonable and provides a basis for relying on the testimony rather than the [DOT].

*Id.* at 209–10. Shortly thereafter, the Fourth Circuit applied its *Pearson* decision to an "apparent conflict" between an ALJ's RFC determination which limited a claimant to "one-to-two step instructions" and General Education Development ("GED") 1 "Reasoning Code 2, which requires the ability to understand detailed instructions." *Henderson v. Colvin*, 643 Fed. Appx. 273, 277 (4th Cir. 2016). The ALJ's reliance on the VE's conclusory testimony that there was no conflict between the VE's testimony and the DOT, without addressing the apparent conflict between the claimant's RFC determination and occupations which the VE testified the claimant could perform, rendered the ALJ's decision unsupported by substantial evidence. *Id.*

Applying *Pearson* and *Henderson* to the instant case, the Court agrees with Plaintiff that there exists an apparent conflict between the VE's testimony and the DOT, which the ALJ failed to resolve. Plaintiff's RFC limits him to work with "no significant reading or writing as part of the job duties." (Tr. 476). In response to hypotheticals, the VE testified that Plaintiff could work as a

farm worker (DOT Code 411.687-018), landscape worker (DOT Code 406.687-010), laundry folder (DOT Code 369.687-018), hand packer (DOT Code 559.657-074), circuit board inspector (DOT Code 726.684-110), or ampoule sealer (DOT Code 559.687-014). The ALJ asked the VE whether any of the identified occupations conflict with Plaintiff's RFC, and the VE testified that there were no conflicts. (Tr. 516). The VE continued to explain "matters pertaining to production" as well as the requisite reasoning level, but did not mention any reading or writing responsibilities in the listed occupations, nor did the ALJ inquire about same. (Tr. 516-525). The occupations of farm worker, landscape worker, and circuit board inspector require level 2 language development skills. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991). Level 2 skills include reading at a rate of 190-215 words per minute and the ability to write compound and complex sentences. U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993). The occupations of laundry folder and ampoule sealer require Level 1 language development skills. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991). Level 1 skills include reading at a rate of 95-120 words per minute and the ability to print simple sentences containing subject, verb, and object. U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993).

Without pointing to any evidence, Defendant contends that the VE understood Plaintiff's "no significant reading or writing" restriction. (ECF No. 16, Ex. 1 at 8). Defendant asserts that Plaintiff would lead the Court to believe that "no significant reading or writing" means *no* reading or writing. *Id.* at 9. Contrary to Defendant's interpretation of Plaintiff's argument, the Court frankly does not know what to believe "no significant reading or writing" means. Defendant urges the Court to adopt the "Dictionary.com" definition of the word significant and determine that Level 1 and Level 2 language skills do not rise to the level of "significant" reading or writing. (ECF No. 16, Ex. 1 at 9). However, the inherent ambiguity in such a limitation necessarily raises an "apparent conflict" that the ALJ is required to identify and explain. To be clear, the Court does not imply that occupations with language Level 1 or Level 2 require "significant reading or writing", but rather the uncertainty makes it such that the ALJ should have identified and explained this apparent conflict. The Court further acknowledges that the issue may lie with the definition, or lack thereof, for "no significant reading or writing." Without more, though, this Court cannot deem the ALJ's opinion as supported by substantial evidence.

Accordingly, remand is warranted. Because remand is necessary as to this issue, I express no opinion on Plaintiff's remaining arguments, and the ALJ may review those issues as deemed appropriate. See *James B. v. Kijakazi*, CV DLB-20-1243, 2021 WL 3912279, at *4 (D. Md. Sept. 1, 2021) (declining review on additional issues because remand was nonetheless warranted). In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 16) is DENIED. The SSA's decision is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____
J. Mark Coulson
United States Magistrate Judge